IT IS HEREBY FURTHER ORDERED that defendant's motion for summary judgment be and the same is denied.

**UNITED STATES of America,**

v.

**Abraham SRULOWITZ, Defendant.**

**No. CR–83–217.**

United States District Court,
E.D. New York.

Sept. 30, 1986.

Nathan Z. Dershowitz and Victoria B. Eiger, Dershowitz & Eiger, P.C., New York City, and Burke & McGlinn, Suffern, N.Y., for defendant.

Andrew J. Maloney, U.S. Atty. by Jane Simkin Smith and Peter A. Norling, Asst. U.S. Attys., for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

### I. BACKGROUND

Defendant Abraham Srulowitz was convicted by a jury in this district on both counts of an indictment. Count one charged a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., while count two charged mail fraud, id. § 1341. The court of appeals reversed the conviction on the mail fraud count and dismissed that count for insuffiency of evidence. Additionally, it vacated the RICO conviction and remanded to this court for further proceedings on that count. United States v. Srulowitz, 785 F.2d 382 (2d Cir.1986).

The court of appeals held that Srulowitz was entitled, on remand, "to pursue a statute of limitations defense related to the propriety of the sealing of the indictment." Id. at 391. This he now does. The statute of limitations argument arises from a somewhat atypical fact pattern, much of which is summarized in the opinion of the court of appeals, id. at 390–91.

The grand jury indicted Srulowitz on May 11, 1983. The RICO count alleged four predicate acts, see 18 U.S.C. § 1961(5), each of which involved allegedly fraudulent mailings. Of the four predicate acts, only two involved mailings alleged to have taken place after May 11, 1978 and thus within the five-year limitations period fixed by 18 U.S.C. § 3282. The court of appeals held that the government failed at trial to offer evidence that a letter of September 23, 1978, which also provided the basis for the mail fraud count, was ever mailed. See Srulowitz, supra, 785 F.2d at 387 ("no rational juror could have concluded beyond a reasonable doubt that the [letter of September 23] had been mailed"). Accordingly, the only remaining allegation of a mailing within the limitations period concerns a letter of June 6, 1978.

Ostensibly, a June 6, 1978 letter, coming as it does after the crucial date of May 11, 1978, would be within the limitations period, if only barely. But, at the government's request, the Srulowitz indictment was sealed by a magistrate and was not unsealed until July 12, 1983. In this connection, the general rule on the federal statute of limitations is:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is *found* or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282 (emphasis added).

The issue before the court is whether the indictment of Srulowitz was "found" on May 11, 1983, when voted by the grand

jury, or on July 12, 1983, when unsealed. If the indictment was not found until it was unsealed, there remains no predicate act within the five-year limitations period, because the June 6, 1978 letter preceded the July 12, 1983 unsealing of the indictment by more than five years. Under that circumstance, the court would be constrained to dismiss the RICO count, which is all that remains of the indictment. *See Srulowitz, supra*, 785 F.2d at 390–91.[1]

## II. CONTENTIONS OF THE PARTIES

The court thus turns to the question of when the indictment was found. Citing *United States v. Southland Corp.*, 760 F.2d 1366, 1379–80 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985), the court of appeals noted that it had

> ruled that the date on which an indictment is "found" within the meaning of § 3282 is the date on which it is returned, rather than the later date of unsealing, when the exercise of a sound discretion has called for the indictment's sealing.

*Srulowitz, supra,* 785 F.2d at 391.

The sealing of an indictment is governed by rule 6(e)(4) of the Federal Rules of Criminal Procedure, which provides:

> **Sealed Indictments.** The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons.

In construing this rule, Srulowitz relies on the following sentence of Judge Friendly's opinion for the Second Circuit in *Southland, supra:* "The limiting effect of the Rule was to place sealing in the hands of a judicial officer rather than as theretofore in those of a prosecutor." *Southland, supra,* 760 F.2d at 1380. According to Srulowitz, rule 6(e)(4) has been violated in this case, because the determination to seal the indictment was made by an Assistant United States Attorney, whose decision was "rubber stamped" by a magistrate without the presentation of papers or arguments in support of sealing. Srulowitz contends that the magistrate exercised no discretion and therefore failed to make the determination implicitly required by rule 6(e)(4).

For its part, the government maintains that it successfully demonstrated at an evidentiary hearing held before this court that there were legitimate reasons to seal the indictment. Max Sayah, now a judge of the New York City Criminal Court, was the Assistant United States Attorney in charge of the *Srulowitz* matter at the time of the indictment. He testified on June 26, 1986, that the main reason he sought to have the indictment sealed was to facilitate the capture of Kenneth Aska, a fugitive alleged to have been involved in an arson-for-profit scheme with Srulowitz and others. A secondary reason advanced by Sayah was that sealing would help the government apprehend Srulowitz.[2]

Even if the government had legitimate reasons to seek sealing of the indictment, it still must answer Srulowitz's argument that the procedure followed before the magistrate was improper. In particular, the government must address *Southland* 's

---

**1.** The court of appeals recognized that Srulowitz had no incentive to press a statute of limitations argument before decision of his appeal, because the September 23, 1978 letter would have come within a limitations period commencing on July 12, 1978, five years before the indictment was unsealed. *See Srulowitz, supra,* 785 F.2d at 391. It was only after the court of appeals ruled the September 23 letter out of the case that Srulowitz gained an opportunity to press a statute of

limitations defense, and the Second Circuit explicitly preserved his right to do so. *See id.*

**2.** Srulowitz vigorously contests the government's theory that sealing was a necessary or legitimate step toward his apprehension or Aska's. For reasons that will become apparent, it is not necessary for the court to address this issue, or the issue of how many predicate acts must take place within the limitations period to support a RICO charge.

declaration that "[t]he limiting effect of the Rule was to place sealing in the hands of a judicial officer rather than as theretofore in those of a prosecutor," 760 F.2d at 1380. Toward this end, the government argues that *Southland* "did not specifically hold that any particular demonstration of need must be made to the magistrate before the indictment could be sealed." Memorandum of Law in Opposition to Motion to Dismiss, July 28, 1986, at 26. As to *Southland*'s characterization of rule 6(e)(4) as placing sealing in the hands of a judicial officer rather than those of a prosecutor, the government offers a variety of responses: (1) the rule itself says no more than that the magistrate directs the sealing; (2) the sentence in question appeared in the context of *Southland*'s discussion of the *reasons* that would justify sealing, and the *procedure* for sealing was not at issue before the Second Circuit; and (3) *Southland*, in relying upon 1 Orfield, Criminal Procedure Under the Federal Rules § 6:1, at 341 (1966), cited an authority that described how rule 6(e)(4) as enacted differed from draft versions of the rule, but rule 6(e)(4) did not change contemporary practice, which had been for the court to direct sealing at the government's request.

Additionally, the government responds to Srulowitz's argument predicated on *Southland*'s quotation of the statement made at a symposium that rule 6 included

> the usual provision for the sealing of the indictment, where the district attorney or the attorney general is of the opinion that the indictment having been procured, *for sound reasons of policy*, nothing should be done for a while, no publication made of the fact. That, of course, is present practice.

*Southland, supra*, 760 F.2d at 1380 (quoting VI Proceedings of the New York University Law School Institute on the Federal Rules of Criminal Procedure 155 (1946)) (remarks of George Medalie) (emphasis added in *Southland* ). Srulowitz reads the

quoted language as implying a duty on the part of the judicial officer to exercise her discretion and determine what the "sound reasons of policy" are. The government answers that both before and after the rule was enacted, the sound reasons of policy were determined by the prosecutor.

Finally, Srulowitz points to the following excerpt from *Southland:*

> The question remains whether the prosecutorial objectives here sought to be obtained justified the sealing of the indictment. This is a point on which great deference should be accorded to the discretion of the magistrate, at least in the absence of any evidence of substantial prejudice to the defendant.

*Southland, supra*, 760 F.2d at 1380.

Srulowitz understands the excerpt to mean that the magistrate must make a decision based upon an informed exercise of discretion. In other words, he contends that the magistrate may not serve as a rubber stamp for a prosecutorial *ipse dixit.* The government, on the other hand, notes that *Southland* did not decide who determines the validity of reasons for sealing an indictment but merely what reasons are valid.

The parties also disagree about the meaning of the legislative history to rule 6(e)(4). Srulowitz notes that a draft of the rule had provided that an "attorney for the government" could direct sealing of the indictment, that a later draft substituted "United States Attorney" in place of "attorney for the government," and that the rule as enacted stated "the court may direct" sealing.[3] According to Srulowitz, this transition in the language of the rule bespeaks a legislative intent that sealing be the subject of careful judicial oversight. The government discerns instead a legislative feeling that it is more appropriate that a judicial officer, rather than government counsel, direct the actions of judicial personnel—in this case, the clerk of the court.

---

**3.** Of course, the current version of the rule refers to "the magistrate" rather than to "the

court."

## III. HOLDING

The issue of how to read rule 6(e)(4) has been briefed capably, even ingeniously, by both sides. Following a careful reading of the parties' memoranda and the authorities cited therein, the court is satisfied that Srulowitz should prevail. Accordingly, the court holds that the indictment was not found until it was unsealed on July 12, 1983. The result of this holding is that no predicate act took place during the limitations period, and the indictment must therefore be dismissed as barred by the statute of limitations.

The starting point for the court's conclusion is *Southland.* While it is true that the Second Circuit was not deciding what procedure was appropriate for sealing an indictment, but merely what type of rationale justified sealing, Judge Friendly's opinion evinces an unmistakable intent that sealing be the result of an active judicial determination and not a passive acceptance of governmental requests. If sealing is to be "in the hands of a judicial officer" and if that officer's exercise of discretion is entitled to "great deference," the magistrate must be doing more than marching to the prosecutor's tune. It is logical to infer that the drafters of rule 6(e)(4) would not go to the trouble of requiring a judicial determination without making it equally mandatory that the determination be subject to review. Were the government permitted to obtain the magistrate's imprimatur on a request to seal without making any record of what the magistrate was told, there would be no reliable distinction between cases where sealing is permissible and those where it is impermissible. The case law that has developed regarding circumstances under which sealing is appropriate, *see, e.g., United States v. Ramey,* 791 F.2d 317 (4th Cir.1986) (sealing appropriate to protect witnesses cooperating in lengthy criminal investigation from danger and undue influence); *United States v. Edwards,* 777 F.2d 644, 648–49 (11th Cir.1985) (tolling

statute of limitations on charges of conspiracy to import with intent to distribute thousands of pounds of marijuana arguably required by public interest and supported by sound reasons of policy), *cert. denied,* —— U.S. ——, 106 S.Ct. 1644, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986); *Southland, supra,* 760 F.2d at 1378–81 (sealing appropriate to help government obtain complete and truthful testimony from immunized witness); *United States v. Michael,* 180 F.2d 55, 56–57 (3d Cir.1949) (court is permitted, in exercise of sound discretion, to impose secrecy for reasons other than obtaining custody of defendant), *cert. denied,* 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383 (1950), would be no more than a charade if meaningful review of the decision to seal were impossible—as it is here, in the absence of a record of the proceedings before the magistrate.[4]

The court in no way impugns the integrity of magistrates when it holds that their decisions on sealing of indictments must be subject to review. It is the nature of our system that, on occasion, counsel will be required to seek *ex parte* relief; generally, a motion to seal an indictment would be meaningless if made on notice. But it is especially important that the rare cases in which *ex parte* relief is necessary not become extraordinary cases in which review is impossible. With all respect to the professionalism and fairness of prosecutors and magistrates, if the rules about sealing of indictments cannot be enforced through appellate review, the grand principles announced by the courts would be no more than "pretend-rules," *see United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 661 (2d Cir.) (Frank, J., dissenting), *cert. denied,* 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946); *accord, e.g., United States v. Borello,* 766 F.2d 46, 57–58 (2d Cir.1985), because they would lack practical impact. Adherence to rules is protected by the adversary system and by the availability of review. In the absence of these guarantors, the rules would be precatory at best—and illusory at worst.

---

4. Judge Sayah, the former prosecutor, testified that he "probably" did not tell the magistrate why he sought to have the indictment sealed

and that there was no transcription made of the proceeding.

The tenor of the cases that discuss sealing of indictments demonstrates that prosecutors have recognized the necessity of making a record when seeking this relief. *Southland*'s admonition that the magistrate's discretion is entitled to "great deference," 760 F.2d at 1380, implies that the reviewing court will have before it a contemporaneous account of the basis for the magistrate's decision, and not merely a *post hoc* rationalization. In *United States v. Ramey*, 791 F.2d 317, 322 (4th Cir.1986), the magistrate held an evidentiary hearing and "painstakingly marshalled" the evidence on which he based his findings. The reviewing court in *United States v. Edwards*, 777 F.2d 644, 648 (11th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1644, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986), had the benefit of a record of the colloquy between government counsel and the magistrate.

■ Because the court finds that the decision to seal an indictment must be made by a magistrate, not by a prosecutor, and that the magistrate's decision must be susceptible of meaningful, if deferential, review, the failure of the government to make a record of its application to the magistrate mandates a holding that the indictment was not found until it was unsealed on July 12, 1983. The consequence of that holding is that no predicate act in the RICO count took place during the limitations period. Accordingly, Srulowitz's motion to dismiss the indictment must be granted.[5]

SO ORDERED.

---

**5.** The court views the violation of rule 6(e)(4) as sufficiently serious to compel rejection of the government's alternative suggestion that a ruling against its position be applied only prospectively. Where a statute of limitations is concerned, harmless error analysis is inapposite. What is more, prospective application of the ruling would smack of the "pretend-rules" against which Judge Frank wisely counseled.