832 F.2d 705
 89 A.L.R.Fed. 857, 24 Fed. R. Evid. Serv. 137
 UNITED STATES of America, Appellee,
v.
Carmine PERSICO, a/k/a "Snake," a/k/a "Junior," Hugh
McIntosh, a/k/a "Apples," Gennaro Langella, a/k/a "Jerry
Lang," John DeRoss, a/k/a "Jackie," Anthony Scarpati, a/k/a
"Scappy," Alphonse Persico, a/k/a "Little Allie Boy," Andrew
Russo, a/k/a "Andy Mush," and Dominic Cataldo, a/k/a "Little
Dom," Defendants- Appellants.
 Nos. 1036 to 1039, 1050 to 1052 and 1056, Dockets 86-1468,
86-1479 to 86-1484 and 86-1494.
 United States Court of Appeals,
Second Circuit.
 Argued July 13, 1987.
Decided Oct. 27, 1987.
 
 Stanley M. Meyer, New York City (DePetris & Meyer, New York City, of counsel; Martin G. Weinberg, Boston, Mass., of counsel, for defendant-appellant Carmine Persico), for defendants-appellants Carmine Persico, John DeRoss, Anthony Scarpati and Alphonse Persico.
 Salvatore J. Marinello, Mineola, N.Y. (Elaine Jackson Stack, Marinello & Rosenstock, Mineola, N.Y., of counsel), for defendant-appellant Andrew Russo.
 Susan G. Kellman, New York City, for defendant-appellant Hugh McIntosh.
 Michael Young, New York City (David Breitbart, New York City, of counsel), for defendant-appellant Gennaro Langella.
 John L. Pollok, New York City (Mark A. Summers, Susan C. Wolfe, Todtman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollok, P.C., New York City, of counsel), for defendant-appellant Dominic Cataldo.
 Aaron R. Marcu, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Bruce A. Baird, Frank H. Sherman, Stuart E. Abrams, Asst. U.S. Attys., New York City, of counsel), for appellee U.S.
 Before NEWMAN, MINER and ALTIMARI, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendants-appellants Carmine Persico, Hugh McIntosh, Gennaro Langella, John DeRoss, Anthony Scarpati, Alphonse Persico, Andrew Russo and Dominic Cataldo appeal from judgments entered in the United States District Court for the Southern District of New York (Keenan, J.), convicting them of various offenses arising from their participation in the affairs of the Colombo Family racketeering enterprise. All eight appellants were convicted of conspiracy to violate provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1962(d) (1982), and seven of the appellants were convicted of substantive RICO violations, id. Sec. 1962(c). In addition, the majority of appellants were convicted of various substantive offenses that also were charged as predicate racketeering acts.
 
 
 2
 On appeal, appellants raise a plethora of claims, only a few of which require discussion. Russo and McIntosh contend that their convictions for substantive RICO violations and RICO conspiracy must be overturned on statute of limitations and double jeopardy grounds. Langella challenges the district court's decision to empanel an anonymous jury. Carmine Persico claims that the district court's sequestration decisions were improper and he raises a due process challenge to the government's compensation arrangement with a key witness. Various appellants join in these claims, and all appellants challenge the admission of a co-conspirator's statements against them. Of these claims, the only ones that have merit are the statute of limitations claims advanced by Russo and McIntosh regarding their convictions under 18 U.S.C. Sec. 1962(c). As a result, we affirm the judgments convicting all appellants, except that we reverse as to the section 1962(c) convictions of Russo and McIntosh.
 
 I. BACKGROUND
 
 3
 The factual predicate for the convictions giving rise to this appeal has been recounted in numerous recent opinions, see United States v. Langella, 804 F.2d 185 (2d Cir.1986); United States v. Russo, 801 F.2d 624 (2d Cir.1986); United States v. Persico, 774 F.2d 30 (2d Cir.1985); United States v. Persico, 646 F.Supp. 752 (S.D.N.Y.1986); United States v. Persico, 621 F.Supp. 842 (S.D.N.Y.1985); United States v. Persico, 620 F.Supp. 836 (S.D.N.Y.), aff'd, 774 F.2d 30 (2d Cir.1985); United States v. Persico, 520 F.Supp. 96 (E.D.N.Y.1981), familiarity with which is assumed. A general outline of the schemes alleged is presented below; to the degree necessary, specific factual recitations relating to the claims meriting review on this appeal are included as part of the discussion of those specific claims.
 
 
 4
 Appellants and six co-defendants were charged, in a 51-count superseding indictment filed on April 4, 1985, with leading, managing and participating in the Colombo Family racketeering enterprise, a professional criminal organization that is one of the New York City constituent units of the American Mafia, by committing or agreeing to commit numerous crimes. Of the six co-defendants not represented in this appeal, five had their cases severed prior to or during trial, and one, Frank Falanga, who was found guilty by the jury, died prior to sentencing.
 
 
 5
 The government delineated the organizational structure of the Colombo Family as follows: Carmine Persico, the Boss of the Colombo Family, assisted by Gennaro Langella, the Underboss, and a Consiglieri, or adviser, led the Family. Alphonse Persico, Carmine's eldest son, also was a trusted adviser and an initiate member of the Family. Anthony Scarpati, John DeRoss and Andrew Russo were Capos, or captains, in the organization. Each Capo is a trusted officer of the Family who leads a crew of "soldiers," consisting of initiated members of the Family. The "soldiers," in turn, command crews of "associates." An "associate" is a criminal colleague who either is ineligible for, uninterested in, or awaiting formal induction into the Mafia. Dominic Cataldo was a soldier in the Family, and Hugh McIntosh and deceased co-defendant Frank Falanga were associates.
 
 
 6
 All eight appellants were charged with conspiracy to conduct and participate in the affairs of the Colombo Family enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Sec. 1962(d). The enumerated predicate acts of racketeering included: extortion and labor bribery in the construction and restaurant industries; repeated bribes to an undercover Internal Revenue Service agent; bribery of federal prison officials; loansharking; and distributing large amounts of narcotics. Langella, DeRoss and Scarpati also were charged with conspiracy to participate in the Colombo Family's affairs through the collection of unlawful debts. 18 U.S.C. Sec. 1962(d); see id. Sec. 1962(c). In addition, all eight appellants were charged with the substantive crime of conducting and participating in the affairs of the Colombo Family enterprise through essentially the same pattern of racketeering activity described above, in violation of 18 U.S.C. Sec. 1962(c).
 
 
 7
 Various appellants were charged with substantive crimes that formed the basis for the patterns of racketeering activity alleged in the RICO counts. Many other charges were dismissed prior to or during trial and are not recounted here. Carmine Persico and Langella were charged with conspiracy to extort money from concrete construction firms in the New York City area, in violation of the Hobbs Act, 18 U.S.C. Sec. 1951 (1982), and Langella was charged with participating in the commission of ten substantive extortionate acts involving various concrete construction companies. See id.; id. Sec. 1951(b)(2).
 
 
 8
 The government accused Langella and Carmine Persico of directing severed co-defendant Ralph Scopo, the president of the District Council of Cement and Concrete Workers Unions, to extort cash payments from at least ten different concrete contractors. These extortions were part of a two-tier scheme formulated by four of the La Cosa Nostra crime families in the New York City area. Pursuant to this scheme, construction projects worth $2 million dollars or less fell within the jurisdiction of the Colombo Family; contractors doing such jobs paid the Colombo Family one percent of the gross contract price of every job in order to prevent labor strife or supply problems. Jobs worth more than $2 million dollars were controlled by a consortium comprised of the Colombo Family and three other New York City area crime families. See generally Langella, 804 F.2d at 187-88.
 
 
 9
 John DeRoss, a vice president of Local 100 of the Hotel Employees and Restaurant Employees International Union, was charged with soliciting and receiving unlawful payments from, or in connection with, five Manhattan restaurants, in violation of 29 U.S.C. Sec. 186(b)(1) and 18 U.S.C. Sec. 2 (1982). The government alleged that DeRoss participated in a scheme in which bribes were solicited and received from restaurant owners so that the owners would be able to violate the terms of their agreements with Local 100 without interference from the union. The government contended that in one instance a bribe was solicited and received as compensation for allowing a restaurant owner to retain the lease for his restaurant.
 
 
 10
 Carmine Persico and Alphonse Persico were charged with paying bribes and gratuities to a federal prison official, in violation of 18 U.S.C. Secs. 201(b)(1), 201(b)(3) & 201(f) (1982). In this count, the government contended that the Persicos paid the bribes and gratuities to a prison official at the Federal Correctional Institution in Ashland, Kentucky, in order to obtain, or on account of, various unwarranted privileges the official sought or obtained for Carmine Persico, who then was an inmate at that correctional facility. The Persicos and Langella also were accused of offering and paying a $20,000.00 bribe to a federal official in exchange for Carmine Persico's transfer from one federal prison to another, in violation of 18 U.S.C. Sec. 201(b)(3).
 
 
 11
 Langella, Scarpati and Russo were charged with conspiracy to make extortionate extensions of credit, see 18 U.S.C. Secs. 891, 892, and conspiracy to collect extensions of credit using extortionate means, see id. Secs. 891, 894. The government's theory was that these appellants and others employed the Colombo Family as a vehicle for lending money at exorbitant rates of interest, and collecting loansharking debts, through the threatened use of force and violence if the loans were not repaid. Langella and Scarpati also were accused of specific collections of credit using extortionate means, in violation of 18 U.S.C. Sec. 894.
 
 
 12
 Numerous other acts of racketeering included as predicate acts in the RICO counts were not charged as substantive offenses. Four appellants, including McIntosh and Russo, made pretrial motions to dismiss from the RICO counts, on double jeopardy grounds, the predicate acts involving the repeated bribery of an undercover IRS agent. These acts, which were not charged as substantive offenses, had been the subject of an investigation and prosecution in the Eastern District of New York, which resulted in guilty pleas by the four appellants to a few of the charges against them. The district court denied the motion, United States v. Persico, 620 F.Supp. 836 (S.D.N.Y.1985), and, on an interlocutory appeal, we affirmed, United States v. Persico, 774 F.2d 30 (2d Cir.1985).
 
 
 13
 Trial commenced on October 15, 1985, and, after an eight-month trial, the jury returned guilty verdicts against all eight appellants on the RICO conspiracy count. All appellants save DeRoss also were convicted on the substantive RICO count. Carmine Persico and Langella were convicted of extortionate conspiracy in the concrete construction industry, and Langella was convicted of participation in the extortion of money from specific construction firms. DeRoss was acquitted of the substantive Hobbs Act counts concerning the restaurant industry. Carmine and Alphonse Persico were convicted of paying an illegal gratuity to a federal prison official, and the Persicos and Langella also were convicted of offering to pay a bribe to a federal official. Guilty verdicts were returned against Langella and Scarpati both for conspiracy to make extortionate extensions of credit and for conspiracy to collect extensions of credit using extortionate means; Russo was acquitted of those conspiracy counts. Langella and Scarpati also were convicted of making and collecting various specific extortionate extensions of credit.
 
 
 14
 This appeal followed the imposition of sentences in the district court.
 
 II. DISCUSSION
 A. Double Jeopardy
 
 15
 The predicate acts that underlie McIntosh's and Russo's RICO convictions also were the subject of a prior investigation and prosecution in the Eastern District of New York that resulted in guilty pleas by McIntosh and Russo to a few of those acts. The Eastern District investigation revealed that Russo, McIntosh and others had offered and paid numerous bribes to IRS Agent Annicharico, who was posing as a corrupt law enforcement official, in what has come to be known as the Annicharico bribe scheme. Pursuant to that scheme, Russo, McIntosh and Carmine Persico bribed Annicharico to prevent the commencement of federal criminal prosecutions of Charles Panarella and Russo, and to influence the disposition of Carmine Persico's application to vacate his sentence. McIntosh and Carmine Persico bribed Annicharico to prevent Persico's transfer from a federal prison in Manhattan. Russo and Cataldo bribed the agent to prevent the commencement of a federal criminal prosecution against Cataldo. Russo also bribed Annicharico to prevent the commencement of a state perjury prosecution and to eliminate back tax liability for an associate and a corporate entity.
 
 
 16
 McIntosh and Russo were indicted in the Eastern District of New York for their roles in the Annicharico bribe scheme. On April 26, 1982, Russo pleaded guilty to conspiracy to bribe a public official, see 18 U.S.C. Sec. 371 (1982), and obstruction of justice, id. Sec. 1505. On November 1, 1982, after four days of trial, McIntosh pleaded guilty to bribery of a public official. Id. Sec. 201(b). Subsequent to the guilty pleas, several other charges against McIntosh and Russo were dismissed on the government's motion.
 
 
 17
 After the filing of the superseding indictment in the instant case, Russo and McIntosh moved pre-trial to have the charges against them dismissed, claiming that the RICO charges predicated on acts relating to the Annicharico bribe scheme were barred by their guilty pleas in the Eastern District prosecution.[1] The district court rejected their pre-trial double jeopardy claims, and we affirmed the district court's judgment on interlocutory appeal. See United States v. Persico, 620 F.Supp. 836 (S.D.N.Y.), aff'd, 774 F.2d 30 (2d Cir.1985). McIntosh's and Russo's attempts to raise a double jeopardy challenge to their convictions after trial also were rejected by the district court. See United States v. Persico, 646 F.Supp. 752, 759-60 (S.D.N.Y.1986). Subsequent motions to vacate their Eastern District criminal convictions, see 28 U.S.C. Sec. 2255 (1982), were rejected in the district court and on appeal. See United States v. Russo, 801 F.2d 624 (2d Cir.1986). On this appeal, Russo and McIntosh again contend that the double jeopardy clause bars their RICO convictions. We disagree.
 
 
 18
 The double jeopardy clause of the fifth amendment declares: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The double jeopardy clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The contentions raised by Russo and McIntosh implicate primarily the second aspect of double jeopardy protection.
 
 
 19
 In part employing the analysis set forth by the Supreme Court in Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), Judge Keenan rejected the double jeopardy claims of McIntosh and Russo. In Garrett, the Supreme Court "upheld the validity of using a prior criminal conviction to support a continuing criminal enterprise conviction under 21 U.S.C. Sec. 848, at least where the 'enterprise' activity continues four months past the date of the conduct underlying the prior conviction." Persico, 774 F.2d at 32. Under the two-step analysis employed by the Supreme Court in reaching that conclusion, the trial court initially must determine whether the legislature intended that each violation be a separate offense. Garrett, 471 U.S. at 778, 105 S.Ct. at 2411. If such intent is evident, the court must then determine whether prosecution for the later offense after an earlier prosecution for a predicate offense violates the double jeopardy clause, under the particular circumstances of the case. Id. at 786, 105 S.Ct. at 2415.
 
 
 20
 In affirming Judge Keenan's judgment denying Russo's and McIntosh's pre-trial motions, we endorsed Judge Keenan's determination that "Congress intended to permit conduct resulting in prior convictions to be used as predicate acts of racketeering activity to establish subsequent RICO convictions," Persico, 774 F.2d at 32 (citations omitted), as well as his conclusion that a trial on the then-pending RICO charges was not barred by the double jeopardy clause, id. We noted that the indictment alleged that the substantive conduct and conspiracy continued, with the participation of all appellants, well beyond the date of the indictments in the Annicharico bribe scheme case. However, we specifically declined to decide whether evidence of post-plea unlawful conduct, or evidence accumulated after the plea demonstrating participation in the criminal enterprise, was required in order to defeat a double jeopardy challenge to a subsequent indictment. Id. After trial, Judge Keenan determined that the government sufficiently had demonstrated that Russo and McIntosh continued as members of the criminal enterprise charged well after pleading guilty in the Eastern District. Persico, 646 F.Supp. at 760. That judgment is the focus of their current appeal.
 
 
 21
 As an initial matter, we entertain serious doubt as to whether evidence of post-plea involvement is necessary to defeat a double jeopardy challenge to RICO convictions based on predicate acts that were the subject of prior guilty pleas. The Supreme Court in Garrett assumed, for purposes of decision, that the predicate act resulting in conviction was a lesser included offense within the continuing criminal enterprise charge. As the Court noted, the subsequent prosecution would not have been barred on double jeopardy grounds even assuming that lesser included offense principles applied. See Garrett, 471 U.S. at 790, 105 S.Ct. at 2417 (majority opinion); id. at 797, 105 S.Ct. at 797 (O'Connor, J., concurring). In fact, the Court cautioned against "ready transposition" of lesser included offense principles derived from cases such as Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (misdemeanor of joyriding lesser included offense within felony of auto theft), to complex, "multilayered conduct" cases. Garrett, 471 U.S. at 789, 105 S.Ct. at 2417. Moreover, several circuits have held that, in similar contexts, the double jeopardy clause is not a bar to RICO prosecutions predicated on racketeering acts that were the subject of prior prosecutions and convictions. See, e.g., United States v. Grayson, 795 F.2d 278, 282-83 (3d Cir.1986) (admission of two prior drug conspiracy convictions as predicate acts for RICO substantive charge not violative of double jeopardy clause), cert. denied, --- U.S. ----, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987); United States v. Boldin, 772 F.2d 719, 728-30 (11th Cir.1985) (prior convictions for drug offenses may be used as predicate acts in subsequent RICO prosecutions); United States v. Licavoli, 725 F.2d 1040, 1049-50 (6th Cir.) (prior bribery conviction properly employed as a predicate act in subsequent RICO conviction), cert. denied, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); United States v. Phillips, 664 F.2d 971, 1015 (5th Cir. Unit B 1981) ("a defendant may be convicted for the predicate acts which form the basis of a RICO charge and subsequently charged under RICO"), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); United States v. Brooklier, 637 F.2d 620, 624 (9th Cir.1980) (extortionate act properly employed as a predicate racketeering act despite prior RICO conviction involving conspiracy to commit that extortion as well as others), cert. denied, 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 815 (1981).
 
 
 22
 We need not reach this thorny issue, however, because, as Judge Keenan found, the government supplied ample evidence of Russo's and McIntosh's continued participation in the affairs of the Colombo Family enterprise after their guilty pleas in the Eastern District. The government demonstrated at trial that Russo was a leader of, and an active participant in, the Colombo Family at least until April 1985, when the superseding indictment was filed. Not only was there testimony from Fred DeChristopher, Russo's brother-in-law, regarding Russo's continued membership in the Colombo Family, but the government also provided evidence that Russo and his sons skimmed money in 1983 and 1984 from the gambling proceeds of a cruise ship casino. Further, the government demonstrated that McIntosh continued to participate in the Colombo Family enterprise's affairs after his guilty plea. DeChristopher testified that Carmine Persico told him that McIntosh remained a member of the enterprise and that when McIntosh was in prison as a result of the Eastern District prosecution, Persico had authorized weekly payments to McIntosh's wife. The government also showed that in November and December of 1978, McIntosh accepted 28 collect telephone calls from Carmine Persico. Later testimony revealed that these calls enabled Carmine Persico to conduct the Colombo Family's affairs while in prison. Among the other evidence was a 1982 telephone conversation between Langella and McIntosh, intercepted by the government, in which they arguably discussed Colombo Family matters. Based on the foregoing and on all of evidence presented, we hold that the government sufficiently established that Russo and McIntosh remained members of the Colombo Family after their guilty pleas in the Eastern District and we affirm Judge Keenan's judgment denying Russo's and McIntosh's motions to set aside the jury verdict on double jeopardy grounds.
 
 
 23
 We also find no error in Judge Keenan's decision to rule on the merits of McIntosh's and Russo's double jeopardy claims after trial, rather than submitting those claims to the jury in some manner. "[D]ouble jeopardy claims [do] not implicate the issue of [a defendant's] guilt or innocence, which a jury must decide, but rather the right of the government to bring the action itself." United States v. MacDougall, 790 F.2d 1135, 1142 (4th Cir.1986); see United States v. H.E. Koontz Creamery, Inc., 232 F.Supp. 312, 315-16 (D.Md.1964); see also 1 C. Wright, Federal Practice and Procedure Sec. 194, at 715 & n. 17 (1982 & Supp.1987). For that reason, district courts routinely respond to pre-trial motions to dismiss indictments on double jeopardy grounds, and, if appropriate, conduct evidentiary hearings to determine whether a defendant has a valid double jeopardy claim. See, e.g., United States v. Stricklin, 591 F.2d 1112, 1119 (5th Cir.) (describing procedure for district court to follow in determining pre-trial double jeopardy claim), cert. denied, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). We perceive no reason why a double jeopardy claim should not be decided by the trial judge throughout all stages of the trial, even when, as in the instant case, the claim requires factual determinations. The assertion of a valid double jeopardy claim at any stage in the trial "precludes trial and thus removes from the jury the issue of guilt or innocence." MacDougall, 790 F.2d at 1142; cf. United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir.1980) (defense of outrageous government conduct properly decided by judge, rather than jury, because it bars government from invoking judicial processes to obtain conviction). Moreover, unlike statute of limitations or venue claims, which merely require a defendant to refute the evidence presented by the government on a particular charge, the type of double jeopardy challenge presented by Russo and McIntosh requires a defendant to show that the acts alleged as part of the current prosecution already have been the subject of successful prior prosecutions. When double jeopardy claims are determined by a trial judge as opposed to a jury,
 
 
 24
 [t]he likelihood of compelling the defendant to make possibly incriminating statements to the jury about the earlier offense in his defense to the subsequent charge or of prejudicing the jurors against the defendant by virtue of their hearing about the charge and evidence in the previous case is thus eliminated.
 
 
 25
 Stricklin, 591 F.2d at 1119. Rather than requiring the district court to charge the jury so as to encompass this type of double jeopardy claim, we think it appropriate for the district court to rule on the claim before, during or after trial.
 
 B. Statute of Limitations
 
 26
 Russo and McIntosh both contend that their RICO convictions are barred by the five-year statute of limitations applicable to RICO prosecutions, 18 U.S.C. Sec. 3282 (1982); see United States v. Walsh, 700 F.2d 846, 851 (2d Cir.), cert. denied, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983), because the last predicate acts ascribable to them occurred more than five years prior to the date of the indictment in the instant case. Judge Keenan denied McIntosh's pre-trial motion to dismiss the indictment on statute of limitations grounds, Persico, 621 F.Supp. at 872-73, and denied McIntosh's and Russo's post-trial statute of limitations motions, Persico, 646 F.Supp. at 760.
 
 1. RICO Conspiracy
 
 27
 The government argues, and Judge Keenan determined, that the statute of limitations for RICO conspiracy should not begin to run until the accomplishment or abandonment of the objectives of the conspiracy. We agree. In order to convict a defendant of RICO conspiracy, only an agreement to commit two or more predicate acts, rather than the acts themselves, need be proven. United States v. Teitler, 802 F.2d 606, 612-13 (2d Cir.1986); United States v. Ruggiero, 726 F.2d 913, 921 (2d Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); United States v. Barton, 647 F.2d 224, 237 (2d Cir.), cert. denied, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). By his agreement, a RICO defendant signals his membership in a conspiracy to conduct the affairs of the charged enterprise. Thus, the RICO conspiracy statute is most closely analogous to other conspiracy statutes pursuant to which overt acts in furtherance of the conspiracy need not be pleaded or proven. See, e.g., United States v. Grammatikos, 633 F.2d 1013, 1023 (2d Cir.1980) (narcotics distribution and importation conspiracies); United States v. Smith, 464 F.2d 1129, 1134 (2d Cir.) (conspiracy to make extortionate extensions of credit), cert. denied, 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972); United States v. Tolub, 187 F.Supp. 705, 709 (S.D.N.Y.1960) (Kaufman, J.) (Hobbs Act conspiracy). Under such statutes, "[f]or limitations purposes, the conspiracy may be deemed terminated when, in a broad sense, its objectives have either been accomplished or abandoned, not when its last overt act was committed." Grammatikos, 633 F.2d at 1023.
 
 
 28
 The statute of limitations applicable to RICO conspiracy provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found ... within five years after such offense shall have been committed." 18 U.S.C. Sec. 3282 (1982). The limitations period is measured from the point at which the crime is complete. See Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Because the RICO conspiracy statute does not require proof of an overt act, we believe that the crime of RICO conspiracy is not complete until the purposes of the conspiracy either have been accomplished or abandoned. See United States v. Coia, 719 F.2d 1120, 1124 (11th Cir.1983), cert. denied, 466 U.S. 973, 104 S.Ct. 2439, 80 L.Ed.2d 822 (1984); United States v. Castellano, 610 F.Supp. 1359, 1384 (S.D.N.Y.1985); but see United States v. Torres Lopez, 656 F.Supp. 257, 262 (D.P.R.1987) (government must show one overt act by any conspirator in furtherance of conspiracy within limitations period). Although proof of a RICO conspiracy requires a demonstration that a defendant agreed to commit two or more predicate acts, rather than a simple showing that the defendant agreed to join the conspiracy, the agreement proscribed by section 1962(d) is conspiracy to participate in a charged enterprise's affairs, not conspiracy to commit predicate acts. We perceive no valid reason why the RICO conspiracy statute should be analyzed in a manner inconsistent with other conspiracy statutes not requiring proof of overt acts.
 
 
 29
 Based on the foregoing, we conclude that the statute of limitations for the RICO conspiracy charges at issue here did not begin to run at least until the filing of the indictment. As Judge Keenan noted, the government amply demonstrated that the conspiracy to conduct the affairs of the Colombo Family continued until, and well after, April 4, 1985, the date the superseding indictment was filed. Therefore, Russo's and McIntosh's convictions for RICO conspiracy were not barred by the applicable five-year statute of limitations.
 
 2. Substantive RICO Counts
 
 30
 The district court determined that the statute of limitations for 18 U.S.C. Sec. 1962(c) should begin to run from the last overt act committed by any member of the group charged. We reach a different conclusion based on prior circuit precedent.
 
 
 31
 In United States v. Walsh, 700 F.2d 846 (2d Cir.), cert. denied, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983), we held that in order to establish a defendant's violation of section 1962(c), the government must prove that the defendant committed two or more predicate offenses, at least one of which occurred within the federal five-year statute of limitations for non-capital offenses. Id. at 851. In rejecting Walsh's claim that the evidence indicated only that a co-defendant had committed a timely predicate act, we emphasized that there was sufficient evidence that Walsh also had committed the act. Central to our analysis was the fact that Walsh himself had participated in a timely predicate act. Similarly, in United States v. Srulowitz, 785 F.2d 382 (2d Cir.1986), we analyzed Srulowitz's statute of limitations claim solely with regard to predicate acts alleged against him, despite the apparent commission of timely predicate acts by other members of the charged enterprise. Id. at 390. See also United States v. Cody, 722 F.2d 1052, 1056-57 (2d Cir.1983) (government must prove defendant committed at least one timely predicate act), cert. denied, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984); Castallano, 610 F.Supp. at 1383 ("Section 3282 does require that each defendant be named in at least one act of racketeering which is alleged to have occurred in the last five years."); United States v. Field, 432 F.Supp. 55, 59 (S.D.N.Y.1977) (statute runs from date of last act of racketeering), aff'd mem., 578 F.2d 1371 (2d Cir.), cert. dismissed, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978); but see United States v. Torres Lopez, 656 F.Supp. at 261 (act by any member of enterprise satisfies statute of limitations).
 
 
 32
 We find the government's attempt to distinguish Srulowitz and Walsh as "single defendant cases" unpersuasive. Both Walsh and Srulowitz had co-defendants, as the respective opinions bearing their names make clear. See Walsh, 700 F.2d at 851; Srulowitz, 785 F.2d at 383. Even if we were to assume that Walsh and Srulowitz involved single defendants, under the government's statute of limitations analysis it would have been sufficient for us to determine whether any unindicted member of the enterprise had committed timely predicate acts, a search that we did not undertake. Instead, we focused solely on the defendant who raised the limitations defense and determined that he had committed one predicate act within the limitations period.
 
 
 33
 Based on the reasoning of our prior decisions, we conclude that in order to satisfy the statute of limitations for section 1962(c), the government must demonstrate that a defendant committed at least one predicate racketeering act within the limitations period. Such a conclusion comports with the structure of section 1962, which treats conspiracies to violate RICO and substantive RICO offenses separately. The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d). We reject the government's attempt to analyze section 1962(c) as if it were a second RICO conspiracy statute. Therefore, because the government failed to demonstrate that either Russo or McIntosh committed a predicate act within the five-year statute of limitations, we reverse their convictions under section 1962(c).[2]C. Admissibility of Coconspirator's Statements
 
 
 34
 Carmine Persico, Alphonse Persico, DeRoss, Scarpati and Russo, joined by the three remaining appellants to the extent relevant to them, all claim that the district court committed reversible error by admitting Fred DeChristopher's testimony about conversations he had with Carmine Persico when Persico was "in hiding" at DeChristopher's house. We disagree.
 
 
 35
 Statements offered against a party and made by a coconspirator of that party in the course of and in furtherance of a conspiracy are admissible against that party. Fed.R.Evid. 801(d)(2)(E); see, e.g., United States v. Rahme, 813 F.2d 31, 35-36 (2d Cir.1987); United States v. Paone, 782 F.2d 386, 390-91 (2d Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986) & --- U.S. ----, 107 S.Ct. 3261, 97 L.Ed.2d 761 (1987). The district court found that the elements of Rule 801(d)(2)(E) were satisfied here and held that DeChristopher's testimony regarding Carmine Persico's statements to him was admissible. Appellants argue principally that the statements made were not in furtherance of the conspiracy and that the conspiracy had ended by the time the statements were made. Absent an abuse of discretion, the district court's decision should not be disturbed on appeal. See Rahme, 813 F.2d at 36; United States v. Acosta, 763 F.2d 671, 679 (5th Cir.), cert. denied, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985); see also United States v. Moon, 718 F.2d 1210, 1232 (2d Cir.1983), cert. denied, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). We perceive no abuse of discretion by Judge Keenan.
 
 
 36
 The evidence provided by the government undermines completely appellants' contention that the conspiracy ended when the original indictment was unsealed in October 1984, prior to the time when Carmine Persico's damaging statements were made. Rather, the government amply demonstrated that the conspiracy was ongoing at least until the time of trial. In fact, the reason for Carmine Persico's presence in the DeChristopher household, as the government's proof convincingly demonstrated, was to avoid prosecution under the indictment in this case. That some of the conspirators had been indicted and were under arrest is unimportant; as some of the charges in this case indicate, the Colombo Family was quite capable of continuing operations despite the fact that some of its members were incarcerated. Moreover, some members of the conspiracy found prison no obstacle to continuing their association with the enterprise. The very purpose of one of the bribe schemes charged was to ensure that Carmine Persico would have ready access to a telephone while in prison, so that he could continue to conduct the Colombo Family's affairs while incarcerated. In this type of enterprise, the mere imprisonment of some of its members does not precipitate the demise of the conspiracy. See, e.g., United States v. Agueci, 310 F.2d 817, 839 (2d Cir.1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Guerro, 693 F.2d 10, 13 (1st Cir.1982). Therefore, we agree with Judge Keenan's determination that the conspiracy continued beyond the period during which Carmine Persico made his damaging admissions to DeChristopher.
 
 
 37
 We also find no error in Judge Keenan's determination that Carmine Persico's statements to DeChristopher were in furtherance of the conspiracy. DeChristopher already was a member of the conspiracy at the time Carmine Persico came to stay at his house, having been involved in the Colombo Family's efforts to skim the gambling profits of a cruise ship. Persico's statements to DeChristopher regarding the activities of the enterprise and the various roles of appellants in it clearly were in furtherance of the enterprise. Among other purposes, the statements "prompt[ed DeChristopher] to respond in a way that facilitate[d] the carrying out of criminal activity," Rahme, 813 F.2d at 35 (citing United States v. Katsougrakis, 715 F.2d 769, 778 (2d Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984)), informed DeChristopher of the "current status of the conspiracy," id. at 35-36 (quoting United States v. Ammar, 714 F.2d 238, 252 (3d Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983)), apprised him of the progress of the conspiracy and solicited his assistance, id. at 36 (citing Paone, 782 F.2d at 391), and informed DeChristopher of the identity and activities of his coconspirators, id. (citing, inter alia, United States v. Perez, 702 F.2d 33, 37 (2d Cir.), cert. denied, 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1336 (1983)).
 
 
 38
 Because neither factual determination challenged by appellants was clearly erroneous, we will not disturb Judge Keenan's decision to admit DeChristopher's damaging testimony into evidence.
 
 D. Compensation Arrangement
 
 39
 Carmine Persico contends that the government's cooperation arrangement with Joseph Iannuzzi amounted to a contingency fee that was so likely to induce him to implicate appellants falsely as to deny them due process. After carefully considering the briefs and record in this case, we conclude that appellants' due process rights were not violated by the admission of Iannuzzi's testimony.
 
 
 40
 Iannuzzi, a long-time associate of the Gambino Family, entered into an agreement with the FBI to provide information regarding La Cosa Nostra and to testify at trials resulting from the information he supplied. In exchange for his cooperation, Iannuzzi was promised a monthly salary, as well as a lump sum payment after all trials were completed, the amount of which would be based on the FBI's evaluation of the "overall quality" of any cases that had been developed. A later rendition of this agreement described the lump sum payment as covering reasonable travel and relocation expenses to a new, and presumably safe, location in the United States. The written agreement also specified that the FBI would determine the amount of payment. As the government conceded at oral argument, however, the written agreement did not supersede the prior "understanding." During trial, the entire scope of the relationship between Iannuzzi and the FBI was revealed to the jury, and defense counsel were permitted to cross-examine Iannuzzi thoroughly regarding the compensation arrangement.
 
 
 41
 Carmine Persico contends that the agreement between Iannuzzi and the FBI constitutes an impermissible contingent fee arrangement. Such arrangements, however, are not per se impermissible. Rather, whether a particular arrangement violates a defendant's due process rights must be assessed on a case-by-case basis. See United States v. Cresta, 825 F.2d 538, 545 (1st Cir.1987). The overwhelming majority of courts, in assessing contingent fee arrangements with informants, have permitted the informant's testimony to be introduced at trial and have deemed the method of payment "a matter for the jury to consider in weighing the credibility of the informant." United States v. Hodge, 594 F.2d 1163, 1167 (7th Cir.1979) (citation omitted). See, e.g., United States v. Dailey, 759 F.2d 192, 199-200 (1st Cir.1985); United States v. Valle-Ferrer, 739 F.2d 545, 546-47 (11th Cir.1984) (per curiam); United States v. Grimes, 438 F.2d 391, 394-96 (6th Cir.), cert. denied, 402 U.S. 989, 91 S.Ct. 1684, 29 L.Ed.2d 155 (1971).
 
 
 42
 In urging us to exclude Iannuzzi's "purchased" testimony, Carmine Persico relies primarily on a recent Fifth Circuit opinion in which a panel majority, in interpreting Williamson v. United States, 311 F.2d 441 (5th Cir.1962), held impermissible a contingent fee arrangement because the informant was promised compensation if he could implicate a preselected individual and because the payment decisions were based on the quality of the informant's work in obtaining a conviction. See United States v. Cervantes-Pacheco, 800 F.2d 452, 457-60 (5th Cir.1986).
 
 
 43
 Were we to adopt that rationale, the government's arrangement with Iannuzzi conceivably could fall within the Cervantes-Pacheco proscription against compensation based on the quality of the informant's work. But see United States v. Edwards, 549 F.2d 362, 365 (5th Cir.) (statement that reward depended on "final results" not sufficient to mandate exclusion of testimony), cert. denied, 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87 (1977). However, Persico's reliance on Cervantes-Pacheco has proven to be ill-advised: The Fifth Circuit, sitting en banc, recently reversed the panel majority in Cervantes-Pacheco and overruled Williamson. See United States v. Cervantes-Pacheco, 826 F.2d 310 (5th Cir.1987) (en banc).
 
 
 44
 The Fifth Circuit's en banc opinion makes clear that "the credibility of the compensated witness, like that of the witness promised a reduced sentence, is for a properly instructed jury to determine." Id. at 316. Like the Fifth Circuit, we have confidence in the jury's ability to assess counsels' arguments about the inherent unreliability of "purchased" testimony, and to evaluate the witness' credibility accordingly.
 
 
 45
 Here, the jury was instructed fully by the district court regarding Iannuzzi's credibility. Moreover, the jury was provided with a complete explication of the circumstances surrounding Iannuzzi's cooperation arrangement with the government, and defense counsel was afforded ample opportunity to cross-examine the witness and present evidence regarding the arrangement. Under the circumstances, the informant's testimony properly was before the jury and the informant's compensation arrangement with the government properly was considered by the jury in assessing the credibility of the witness. We hold, therefore, that the admission of Iannuzzi's testimony did not violate appellants' due process rights. Furthermore, the promise of compensation related to the "overall quality" of cases that were developed and did not depend on the outcome of any prosecution or the inclusion of any preselected person in the accusation.
 
 E. Procedures Relating to the Jury
 
 46
 Langella's challenge to the district court's decision to empanel an anonymous jury is without merit. Judge Keenan based his decision on "the violent acts alleged to have been committed in the normal course of Colombo Family business, the Family's willingness to corrupt and obstruct the criminal justice system, and the extensive publicity this case is expected to continue to attract." Persico, 621 F.Supp. at 879. We find no fault with the district court's conclusion that an anonymous jury was necessary. See United States v. Barnes, 604 F.2d 121, 134-35, 137 (2d Cir.1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). In addition, Judge Keenan properly conducted a searching voir dire, which alleviated the risk that providing jurors with anonymity would cast unfair aspersions on appellants. See United States v. Thomas, 757 F.2d 1359, 1364-65 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). The various other security precautions taken by Judge Keenan, including segregating jurors during lunch time and recesses and having marshals transport the jurors to a central location from which they were discharged each day, were fully warranted by the circumstances of this case.
 
 
 47
 Carmine Persico's claim of error predicated on Judge Keenan's decision not to sequester the jury during the eight-month trial followed by his decision to sequester the jury during deliberations fares no better. Sequestration is a matter committed to the sound discretion of the trial court, and its decision will not constitute reversible error absent a showing of actual prejudice arising therefrom. See, e.g., United States v. Phillips, 664 F.2d 971, 998 n. 24 (5th Cir. Unit B 1981), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); United States v. Johnson, 584 F.2d 148, 154-55 (6th Cir.1978), cert. denied, 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979); United States v. Breland, 376 F.2d 721, 723-24 (2d Cir.1967). Rather than finding prejudice arising from Judge Keenan's sequestration decisions, we believe that his decisions helped protect appellants' rights to a fair trial and were a sensible response to the circumstances presented by this trial.
 
 F. Other Claims
 
 48
 We have examined carefully appellants' remaining claims and find them to be without merit.
 
 III. CONCLUSION
 
 49
 Based on the foregoing, we affirm the judgments of conviction as to appellants Carmine Persico, Langella, DeRoss, Scarpati, Alphonse Persico and Cataldo. We affirm as to appellants McIntosh's and Russo's RICO conspiracy convictions; we reverse as to their convictions for violations of section 1962(c). We commend the district court for its perserverance through the course of these difficult proceedings.
 
 
 50
 JON O. NEWMAN, Circuit Judge, concurring in part and dissenting in part:
 
 
 51
 I concur in all aspects of Judge Miner's comprehensive opinion except those portions that reject the double jeopardy defense of defendants McIntosh and Russo with respect to their convictions on the RICO substantive and conspiracy counts, 18 U.S.C. Sec. 1962(c), (d) (1982), and their statute of limitations defense with respect to their convictions on the RICO conspiracy count. As to the jeopardy defense, I believe these defendants are entitled to a retrial so that the jury, rather than the trial judge, can make the critical factual determination of when their criminal conduct occurred. As to the limitations defense, I believe these defendants are entitled to a dismissal of the conspiracy charge, in addition to the dismissal of the substantive charge ordered by the majority.
 
 1. Double Jeopardy
 
 52
 Whether the jury should have decided the factual dispute on which the jeopardy defense depends appears to be a novel issue not previously considered by any court. Though many aspects of a jeopardy defense are appropriately determined by the trial judge, the issue presented by this case is whether a defendant is entitled to have a jury decide when his alleged criminal conduct occurred under circumstances where the availability of the jeopardy defense turns on that factual determination. My disagreement with the majority concerning the jury's role in resolving this factual dispute requires some explanation of the issues relevant to the jeopardy defense; as to most of these issues I share the majority's views.
 
 
 53
 Initially, I agree with the majority that Congress intended RICO offenses to be separate from and in addition to offenses based on predicate acts, United States v. Walsh, 700 F.2d 846, 856 (2d Cir.), cert. denied, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983), and that the Double Jeopardy Clause does not necessarily bar a RICO conviction simply because a prior conviction or the facts underlying a prior conviction are used to establish a predicate act, see Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (allowing use of facts underlying prior conviction to establish predicate act for a continuing criminal enterprise violation, 21 U.S.C. Sec. 848 (1982)). In this case the only predicate acts proven against McIntosh and Russo concerned conduct for which they had previously been convicted. In such circumstances, as the majority appears to accept, the double jeopardy defense may not be rejected in the absence of evidence of continued participation in the affairs of the RICO enterprise after some date relevant to the predicate act offenses. Though questioning Judge Keenan's use of the day of the guilty plea to the prior charges as the significant date, the majority is satisfied that even if that date is used, there was sufficient evidence in this case to support a finding that McIntosh and Russo continued to participate in the affairs of the Colombo Family enterprise after the entry of their guilty pleas to the Annicharico bribery offenses. In view of the concurring opinion in Garrett by Justice O'Connor, who provided the fifth vote for affirmance, I agree that participation in the affairs of the RICO enterprise must be shown to have continued after some date relevant to the predicate act offenses. Though it does not matter in this case, nor did it in Garrett, I should think the pertinent date is the last date of the predicate offense, rather than the date of the plea to that offense. That will normally be the date of the indictment, since the Government frequently indicts for conduct continuing up to that time. Once an indictment has been returned for a predicate act offense, the Government should not be obliged to reindict for continuing conduct occurring between the date of that indictment and the date of conviction, on pain of being barred on jeopardy grounds from using evidence of conduct during that interval in a subsequent RICO prosecution.
 
 
 54
 I disagree with the majority, however, that it was sufficient for the trial judge to make the factual determination that McIntosh and Russo committed enterprise activity after the predicate offenses for which they had been convicted. That determination should have been made by the jury under a proper instruction, which was requested and denied.
 
 
 55
 In many situations, I readily acknowledge, the trial judge may properly adjudicate a double jeopardy defense. Where the defense poses the issue of whether the statute defining the prior offense and the statute defining the current offense each require proof of a fact not required by the other statute, see Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that issue of law is manifestly for the trial judge. And whenever the defendant asserts a jeopardy defense in a pretrial motion to secure insulation from trial, the judge may properly decide the motion and make all factual determinations necessary to its resolution. As the majority points out, trial judges regularly decide jeopardy claims raised in advance of trial and conduct evidentiary hearings where necessary. See, e.g., United States v. Stricklin, 591 F.2d 1112 (5th Cir.), cert. denied, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). But if a trial judge has denied a pretrial jeopardy motion, a jury must make the factual determination at trial as to when the charged offense occurred where, as here, that factual determination is critical to the jeopardy defense.
 
 
 56
 Once the defendant has shown that the predicate acts the Government intends to prove in a RICO prosecution have resulted in a prior conviction, the Government is obliged, by virtue of Justice O'Connor's concurrence in Garrett, to prove that the defendant continued to participate in the enterprise after the prior offenses. The majority here accepts that requirement. No case has ever held that where the prosecution is obliged to prove that criminal conduct occurred at a particular time (in this case, after a particular date), the trial judge may take from the jury the issue of whether that circumstance has been proved. Juries regularly make such findings in determining whether the offense charged was committed within the applicable period of limitations. It is difficult to understand why the jury that determines the time of an offense for purposes of a statutory requirement does not do so for purposes of a constitutional requirement.
 
 
 57
 The need to have the jury make the factual determination of when the criminal conduct occurred for purposes of a jeopardy defense is highlighted by the circumstances of this case. The jury was asked to determine, as an element of the RICO substantive offense, whether McIntosh and Russo participated in the affairs of a criminal enterprise; the jury was instructed that it must find that each defendant committed two predicate acts, one of which occurred in the five years preceding the indictment. The defendants requested an instruction that the jury would also have to find some type of conduct subsequent to their predicate act offenses that established either a second predicate offense or at least participation in a criminal enterprise.[1] This instruction was refused. Thus, the jury was permitted to convict McIntosh and Russo on the basis of evidence that they participated in the criminal enterprise solely by committing the Annicharico bribery offenses. Though there is evidence that would permit a finding of criminal enterprise activity after these offenses, and Judge Keenan made such a finding, a jury asked to consider the matter would have been entirely justified in thinking that the evidence of conduct subsequent to the Annicharico offenses was insufficient to prove continued participation in the criminal enterprise. We are thus left with the possible anomaly of a guilty verdict rendered jointly by a jury and a judge who may have found the facts differently. Under the charge as given, the jury could have convicted solely because of the predicate act offenses and may have believed there was no subsequent enterprise activity by McIntosh and Russo, while the judge has made the contrary finding that such subsequent activity occurred. In my judgment, neither the right to trial by jury nor the protection of the Double Jeopardy Clause can be circumvented by permitting a judge to replace the jury as the fact-finder as to when criminal conduct occurred.
 
 
 58
 The majority upholds the judge's role in making the key factual determination as to enterprise activity out of expressed solicitude for the defendants. Repeating an argument advanced by the Fifth Circuit in United States v. Stricklin, supra, 591 F.2d at 1119, the majority suggests that if the jury does the fact-finding, the defendant will be prejudiced in two ways: The jury will hear evidence of the prior conviction, and the defendant may have to make incriminating statements about the prior offense (if there has been no conviction) in order to establish his jeopardy defense. For three reasons, this argument is unavailing. First, the defendant has a right to jury consideration of the factual issue, and, if he believes that submission of the issue to the jury will be harmful, he can ask that the matter be decided by the judge.[2] McIntosh and Russo sought to have the matter put to the jury and were denied that right. Second, because only time is at issue, the jury can consider the factual issue without ever hearing anything about a prior offense. A defendant raises the jeopardy defense before trial by showing that he has been convicted of a prior offense and disputing that he committed any enterprise activity after the last date of the prior offense. At that point the burden is on the Government to prove that such activity occurred after the relevant date. If the jeopardy issue is pursued at trial, the jury need be told only that it must find such activity to have occurred after the relevant date. There is no need for the jury ever to know about the prior conviction in trials where the fact of conviction is not otherwise in evidence. And because the burden is on the Government to prove the enterprise activity in the relevant time period, the defendant is not obliged to testify or present any evidence to the jury. Third, in this case evidence of the Annicharico bribery offenses was already before the jury because the Government used the defendants' convictions of these offenses to establish the required predicate offenses. Thus jury fact-finding as to when the offense occurred will not prejudice a defendant in any case and surely not in this case.
 
 
 59
 For these reasons, I conclude that McIntosh and Russo are entitled at least to a new trial.
 
 2. Statute of Limitations
 
 60
 The majority reverses the convictions of McIntosh and Russo on the RICO substantive count for lack of evidence that either of them committed a predicate act within the five-year limitations period. I agree with that holding. I disagree, however, with the rejection of the limitations defense as to the RICO conspiracy count.
 
 
 61
 Conspiracies that may be established without proof of an overt act do not terminate for limitations purposes until the objectives of the conspiracy have either been accomplished or abandoned. See United States v. Grammatikos, 633 F.2d 1013, 1023 (2d Cir.1980). RICO conspiracies do not require proof of an overt act. However, it is the settled law in this Circuit that each defendant charged with a RICO conspiracy must be shown not only to have joined the overall criminal enterprise conspiracy but also to have joined specific conspiracies to commit at least two predicate acts. United States v. Teitler, 802 F.2d 606, 612-13 (2d Cir.1986); United States v. Ruggiero, 726 F.2d 913, 921 (2d Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); United States v. Barton, 647 F.2d 224, 237 (2d Cir.), cert. denied, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). That requirement raises the issue whether a defendant may be convicted of a RICO conspiracy where the Government fails to prove that a specific conspiracy to commit a predicate act continued into the limitations period. I believe we must reject a conviction in such circumstances if we are fully to respect the Teitler-Ruggiero-Barton requirement.
 
 
 62
 If a defendant can be convicted of a RICO conspiracy whenever the objectives of the overall conspiracy continue into the limitations period, there seems little point in requiring proof of his agreement to commit two predicate acts. Indeed, as this case illustrates, it is extremely anomalous to insist that at least one predicate act occur within the limitations period in order to convict on a RICO substantive count and not require that at least one conspiracy to commit a predicate act continue into the limitations period in order to convict on a RICO conspiracy count. McIntosh and Russo committed the RICO substantive offense when they first joined the Colombo Family criminal enterprise and thereafter committed the Annicharico bribery offenses. They committed the RICO conspiracy offense when they first agreed to join the Colombo Family criminal enterprise and thereafter agreed to commit the Annicharico bribery offenses. Their conviction on the substantive offense is now vacated because these bribery offenses were completed before the limitations period and no other predicate act occurred within the limitations period. But they stand convicted of the conspiracy offense even though their agreement to commit the bribery offenses ended before the limitations period (when those offenses were complete) and no agreement to commit any other predicate act continued within the limitations period. Thus, these defendants are exonerated because the predicate acts they committed occurred more than five years prior to indictment, but they remain convicted even though their agreement to commit those same acts also ended more than five years prior to indictment. I do not understand how the criminal law can deal more harshly with a defendant who only agrees to commit a time-barred predicate act than with a defendant who commits such an act.
 
 
 63
 For these reasons, I would reverse the convictions of McIntosh and Russo on the RICO conspiracy count.
 
 
 64
 On the jeopardy and limitations issues, I respectfully dissent to the extent indicated. In all other respects, I join the opinion of the Court.
 
 
 
 [1]
 We note that all of the racketeering acts charged against McIntosh were committed as part of the Annicharico bribe scheme, whereas the RICO charges against Russo included racketeering acts unrelated to that scheme. However, the jury indicated that its verdict against Russo was based solely on the Annicharico bribe scheme predicate acts. Because of the manner in which we dispose of Russo's and McIntosh's double jeopardy challenges infra, the differences between their claims are irrelevant for purposes of our decision, and we will discuss their claims together
 
 
 [2]
 On appeal, the government contends that reversal of Russo's conviction is not warranted because he was a fugitive for nearly two years and therefore that the statute of limitations was tolled during that time. See 18 U.S.C. Sec. 3290 (1982) ("No statute of limitations shall extend to any person fleeing from justice."). However, the government did not present this argument to the district court, nor was Russo allowed the opportunity to defend against it. Instead, the government requests that we determine whether the statute of limitations was tolled as to Russo based on random references culled from the record
 As the Supreme Court noted in a similar context, the government "may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." Steagald v. United States, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981) (emphasis added) (factual question whether defendant was "resident" of house for purposes of determining if he had reasonable expectation of privacy in that dwelling waived by, inter alia, government's failure to raise issue in lower courts). See United States v. Kimmel, 741 F.2d 1123, 1125 (9th Cir.1984) (review of issues in dismissal of indictment on due process and double jeopardy grounds limited to those actually raised by government at hearing on motion to dismiss); United States v. Thompson, 710 F.2d 1500, 1504 (11th Cir.1983) (alternate justifications for search waived by government's failure to raise them at suppression hearing), cert. denied, 464 U.S. 1050, 104 S.Ct. 730, 79 L.Ed.2d 190 (1984); United States v. Sanchez, 689 F.2d 508, 509 n. 1 (5th Cir.1982) (government waived issue of defendant's standing to complain of stop and search by failing to raise it below); United States v. Gonsalves, 675 F.2d 1050, 1055 n. 9 (9th Cir.) (government waived right to raise issue whether jury, rather than judge, should determine if defendant was fleeing from justice under 18 U.S.C. Sec. 3290 by failing to raise it in timely fashion), cert. denied, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982). Here, the government apparently concedes that it did not raise this issue in the district court, and has offered no justification for its failure to do so. Therefore, we deem the issue to be waived.
 
 
 [1]
 The requested instruction focused on the time period after the plea to the prior offenses, since Judge Keenan had expressed the view that the Double Jeopardy Clause required evidence of enterprise activity after that date, or at least accumulation of evidence of such activity after that date. See United States v. Persico, 620 F.Supp. 836, 844 (S.D.N.Y.), aff'd without consideration of this point, 774 F.2d 30 (2d Cir.1985). Though I would permit the Government to defeat the jeopardy defense by showing enterprise activity occurring any time after the last date of the prior offenses, see text, supra, the defendants cannot be faulted for requesting a charge that used the time period deemed pertinent by the trial judge
 
 
 [2]
 Even if the Government's opportunity to insist on a jury trial, see Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Fed.R.Crim.P. 23(a), were deemed applicable to the narrow factual dispute on which the jeopardy defense turns in this case, a defendant who preferred not to submit the issue to the jury could avoid doing so. He could make his pretrial motion to the judge for dismissal on jeopardy grounds, and, if that motion was denied, appeal either pretrial or post-trial to challenge the sufficiency of the evidence of enterprise activity after the relevant date. Nothing would require him to renew the jeopardy defense before the jury